IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 06-799 T

(Judge Christine O.C. Miller)

ROBERTO GAGLIARDI AND MARIA L. GAGLIARDI,

Plaintiffs

v.

THE UNITED STATES,

Defendant

---

PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACTS AND LAW

---

Plaintiffs Roberto and Maria L. Gagliardi ("Gagliardis") hereby submit their Memorandum of Contention of Facts and Law pursuant to Paragraph 14 of Appendix A to the Rules of the Court of Federal Claims. This memorandum addresses the sole issue in this case: whether the Gagliardis are liable for the fraud penalty proscribed by 26 U.S.C. § 6663.

## I. STATEMENT OF FACTS PLAINTIFF WILL PROVE AT TRIAL AND PLAINTIFF'S POSITION RESPECTING FACTS ON WHICH DEFENDANT IS EXPECTED TO RELY

### A. The Gagliardis had a close, longstanding relationship with their CPA, Mr. Lawrence Goodman, and he had complete access to all their files.

Lawrence Goodman was Maria Gagliardi's father's Certified Public Accountant ("CPA"). As such, Mrs. Gagliardi has known Mr. Goodman since the 1970's, and he was also her personal

CPA from that time until 2004, when the Gagliardis terminated him. Dr. Gagliardi is a dentist, and Mrs. Gagliardi is a housewife. The Gagliardis have always used Mr. Goodman as their CPA. Mr. Goodman served as a reference when the Gagliardis adopted their two children. Mr. Goodman also recommended that Dr. Gagliardi buy two dental practices, and Mr. Goodman performed all the due diligence work necessary for the purchase of those two practices. Mr. Goodman was intimately familiar with the Gagliaridis, both professionally and personally.

Each year, before Mr. Goodman prepared the Gagliardis' tax returns, Mr. Goodman gave the Gagliardis a list of information he needed. The Gagliardis compiled all the financial information and submitted it to Mr. Goodman. Given their longstanding relationship, the Gagliardis trusted that Mr. Goodman would ask them if he needed any additional information, or had any questions or concerns about their finances. In 2001, Dr. Gagliardi purchased a dental practice in Fairlawn, New Jersey. Dr. Gagliardi kept all his financial information for his practices and his family in his Fairlawn, New Jersey office on the first floor. Mr. Goodman's office was in the same building on the second floor. From 2001 to 2004, Mr. Goodman always had full access to the Gagliardis' financial information.

In 2003, when the Gagliardis first received their notice of audit from the IRS, Dr. Gagliardi immediately gave it to Mr. Goodman, and asked Mr. Goodman to represent the Gagliardis in the audit. Mr. Goodman asked the Gagliardis for a list of information that he needed for the audit. The Gagliardis compiled all the information and gave it to Mr. Goodman in a stack of documents. When Mr. Goodman saw the checkbook from the Gagliardis' Kearny Federal Savings Bank checking account ("Kearny account") in the documents given to him, he separated the checkbook from the documents and gave it back to Dr. Gagliardi, saying that he would not need it for the audit.

During 2003 and 2004, the IRS sent several notices and Information Document Requests ("IDR") to the Gagliardis. The Gagliardis handed over all such notices and IDRs to Mr. Goodman as soon as they received them, and never directly responded to any notice or IDR. No one from the IRS ever spoke directly with the Gagliardis. The Gagliardis never spoke to any representative of the IRS, nor did they supply any information to the IRS independently of Mr. Goodman. All communication with the IRS was handled on the Gagliardis' behalf by Mr. Goodman. Between January 2003 and July 2004, Mr. Goodman met and corresponded with the IRS several times.

On or around October 28, 2003, the Revenue Agent on the case, Mary Weime, found evidence of the Gagliardis' Kearny account in the Gagliardi files. Ms. Weime then issued a summons to Kearny Federal Savings Bank to retrieve the Gagliardis' bank statements and deposits from their Kearny account. When Ms. Weime questioned Mr. Goodman about the Gagliardis' Kearny account, Mr. Goodman said he had no knowledge of this bank account. Mr. Goodman never informed the Gagliardis that the IRS had summoned records regarding their Kearny account.

On June 16, 2004, Ms. Weime met with Mr. Goodman and reviewed the proposed adjustments for tax years 2000 and 2001, which included a fraud penalty. Without authorization from the Gagliardis, Mr. Goodman told Ms. Weime that he would agree to the fraud penalty because he could not refute it. The Gagliardis anticipated visiting Italy over the summer of 2004. Before Dr. Gagliardi went on vacation, he expressly instructed Mr. Goodman to put off coming to a resolution of the audit with the IRS until Dr. Gagliardi could come back from Italy and hire an attorney. On July 14, 2004, the same day that the Gagliardis flew to Italy on vacation, Mr. Goodman signed the Form 4549 agreeing to the fraud penalty on behalf of the Gagliardis. The Gagliardis had no knowledge that Mr. Goodman had agreed to a fraud penalty on their behalf.

In late August of 2004, when the Gagliardis came back from their vacation in Italy, Mr. Goodman informed them that they owed outstanding taxes from tax years 2000 and 2001. On September 2, 2004, Mr. Goodman sent the Gagliardis a memorandum outlining their outstanding taxes. Nowhere in this memorandum did Mr. Goodman mention the amount incurred as a result of the fraud penalty. In early September 2004, Mr. Goodman finally told the Gagliardis that he had agreed to a fraud penalty. Upon being so advised, the Gagliardis immediately terminated Mr. Goodman, and hired Calo Agostino, PC to represent them in this matter.

**B. Plaintiffs position with respect to facts on which defendant is expected to rely.**

Defendant has not provided Plaintiffs with any facts on which it expects to rely, and therefore Plaintiffs cannot address this issue at this time.

## II. STATEMENT OF ISSUES OF FACT AND LAW TO BE RESOLVED BY THE COURT.

The sole issue in this case is whether the Gagliardis are liable for the fraud penalty proscribed by 26 U.S.C. § 6663.

## III. DISCUSSION OF THE LEGAL PRINCIPLES PLAINTIFF CONTENDS ARE APPLICABLE, AND PLAINTIFFS' RESPONSE TO DEFENDANT'S ANTICIPATED LEGAL POSITION.

The only issue in this case is whether Plaintiffs are liable for the fraud penalty proscribed by 26 U.S.C. § 6663. Defendants contend that the fraud penalty imposed under 26 U.S.C. § 6663 is applicable. However, based on Defendant's evidence provided in discovery, Defendant will not be able to prove that Plaintiffs intended to evade tax or that any part of any underpayment of tax required to be shown on a return is due to fraud.

Generally, in most tax cases, the burden of proof is on the taxpayer to show that he did not

deserve the penalties applied. Cook v. United States, 46 Fed.Cl. 110, 113-14 (2000). However, in fraud cases, burden of proof always rests on the IRS. Irolla v. United States, 182 Ct.Cl. 775 (1968). As stated in Irolla:

> Although a taxpayer suing for a tax refund generally has the affirmative burden of proving all the facts essential to establish his right to recover, **a taxpayer suing for the refund of a civil fraud penalty assessed against him and collected from him does not have the burden of establishing freedom from fraud.** United States v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960). On the contrary, where the recovery of a civil fraud penalty is sought, the Government has the burden of proving fraud against the taxpayer, even thought the Government is the defending party in the action. Armstrong v. United States, 173 Ct.Cl. 944 (1965) (emphasis added).

Irolla v. United States, 182 Ct.Cl. 775 (1968).

The Government must prove fraud by clear and convincing evidence. Irolla, 390 F.2d at 953, (citing Powell v. Granquist, 252 F.2d 56, 61 (9th Cir. 1958); Mensik v. Commissioner of IRS, 328 F.2d 147, 150 (7th Cir. 1964)).

In Irolla, this Court described how the government could satisfy this burden, stating, "This task is a difficult one, since the state of the taxpayer's mind, a subjective condition, is crucial in determining the existence or absence of the essential element of fraudulent intent." Id. at 953 (citing Armstrong v. United States, 354 F.2d 274, 286 (Ct.Cl. 1965). The government can meet its burden by producing circumstantial evidence. Id.

In the instant case, Defendant has produced no evidence that Plaintiffs intended to evade any income tax. As stated, Plaintiffs have known and employed their CPA, Mr. Goodman for the entirety of their marriage. Mr. Goodman was a personal friend of the Gagliardis, and was intimately familiar with the state of their financial affairs. The Gagliardis trusted him to correctly report their income on their tax returns and provided him with all the information necessary for that task.

Given the lack of evidence of fraudulent intent on the part of Plaintiffs and their complete reliance upon Mr. Goodman to properly report their income, it is respectfully submitted that the evidence will show that no part of any part of any underpayment of Plaintiff's tax was due to fraud.

Respectfully submitted,

/s/ Frank Agostino

Calo Agostino, PC
14 Washington Place
Hackensack, NJ 07601

January 11, 2008

Attorney for Plaintiffs