IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-799 T

(Judge Christine O.C. Miller)

ROBERTO GAGLIARDI AND MARIA L. GAGLIARDI,

Plaintiffs

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to paragraph 14 (b) of Appendix A to the Rules of the United States Court of Federal Claims, defendant, the United States, submits this memorandum of contentions of fact and law.

## I

## INTRODUCTION

This action is brought pursuant to 28 U.S.C. § 1491, and seeks a refund of civil fraud penalties assessed for the 2000 tax year in the amount of $13,437.75 and a refund of civil fraud penalties assessed for the 2001 tax year in the amount of $4,305.00. Roberto Gagliardi is a dentist and during the years in issue he operated dental practices at multiple locations. Roberto and Maria Gagliardi's ("the Gagliardis'") income tax returns for the 2000 and 2001 tax year

were audited by the Internal Revenue Service. As a result of the audit, the Internal Revenue Service determined that: (1) there was an understatement of income for the periods in issue; (2) the Gagliardis deposited business income into personal accounts and failed to maintain adequate business records to ensure that all business income would be reported on the income tax returns for the periods in issue; and (3) the Gagliardis concealed a personal bank account which contained business income which was not reported. The Internal Revenue Service determined that the understatement of income by the Gagliardis for the 2000 and 2001 tax years was due to fraud. The audit was closed as an agreed audit for the 2000 and 2001 tax years with respect to both the income adjustments and the fraud penalties proposed.

## II

## DEFENDANT'S CONTENTIONS OF FACT

### A. The dental practices

During 2000, Roberto Gagliardi practiced dentistry at two locations: 716 Palisades Avenue, Union City, New Jersey ("Union City"); and 17-71A River Road, Fairlawn, New Jersey ("Family Dentistry of Fairlawn, LLC"). (Def. Ex. 17.) In 2001, Roberto Gagliardi purchased a third dental practice at 32-16 Broadway, Fairlawn, New Jersey ("Restorative Dentistry"). (*Ibid*.)

During 2000 and 2001, Roberto Gagliardi maintained a business checking account (0101176732) at Fleet National Bank. (Def. Exs. 17, 19, 20.) This account was associated with his Union City dental practice. (*Ibid*.)

During 2000 and 2001, Family Dentistry of FairLawn, LLC, maintained a business checking account (610-5297805), at Bank of New York and a business checking account (40542815), at Valley National Bank. (*Ibid*.)

Also, during 2001, Roberto Gagliardi maintained a business checking account (610-657689), at Bank of New York. (Def. Exs. 17, 20.) This account was associated with Roberto Gagliardi's Restorative Dentistry practice. (*Ibid*.)

**B. The Gagliardis' background**

Roberto Gagliardi received his undergraduate degree from St. Peter's College where he majored in natural science. He then attended dental school at Fairleigh Dickinson University and received a DMD degree. Roberto Gagliardi is licensed to practice dentistry in the State of New Jersey.

Maria Gagliardi received a Bachelor of Science degree in management from St. Peter's College. From 1984 through 1990, Maria Gagliardi worked as a foreign exchange teller for United Jersey Bank in Hackensack, New Jersey. Beginning in 1991, Maria Gagliardi helped her husband with bookkeeping at his Union City dental office.

**C. Multi-year concealment of income and assets from tax preparer and bookkeeper**

Lawrence Goodman, a certified public accountant, licensed in New Jersey and New York, was hired by the Gagliardis to prepare their 2000 and 2001 income tax returns. In preparing the 2000 and 2001 tax returns, Mr. Goodman only relied on the information the Gagliardis provided him themselves and through their bookkeeper, Carole Downey. She prepared the books and records for each of the Gagliardis' dental offices during 2000 through approximately September 30, 2001. Part of her responsibility was to organize the financial information about the Gagliardis' dental practice so that their accountant could prepare their income tax returns. Using a computer software program (Quickbooks), Ms. Downey kept meticulous records of the Gagliardis' business transactions in 2000 and 2001. She prepared

balance sheets, profit and loss statements, and trial balances for each of the dental offices. Among other tasks, Ms. Downey also prepared a bank reconciliation report for every bank statement she was given. Ms. Downey also tracked business income, including any business income diverted to personal use. The Gagliardis never told Ms. Downey that they were depositing a portion of the dental receipts from the Union City office into their personal bank accounts. Therefore those amounts were not recorded in the books and records prepared by Ms. Downey. Ms. Downey was also never told about Dr. Gagliardi's personal checking account at Kearney Federal Savings Bank.

For both years at issue, Mr. Goodman, to prepare the income tax returns, requested of the Gagliardis bank statements, cancelled checks, and the Gagliardis' general ledgers. In preparing the tax returns, Mr. Goodman believed that he had received from the Gagliardis everything which he had requested. Ms. Downey thought that she was accurately accounting for the income for each of the Gagliardis' dental offices. The Gagliardis gave Mr. Goodman and Ms. Downey no indication to the contrary.

**1. The 2000 tax year**

On April 15, 2001, the Internal Revenue Service received from the Gagliardis a U.S. Individual Income Tax Return (Form 1040) for the calendar year 2000. (Def. Ex. 1.) The Gagliardis' income tax return for the 2000 tax year reported a tax liability of $7,497.00, estimated tax payments for the 2000 tax year and amounts applied from the 1999 return of $14,840.00, and a tax overpayment of $7,343.00. (*Ibid.*) The Gagliardis sought to apply the $7,343.00 claimed overpayment in tax paid for 2000 to their 2001 estimated tax. (*Ibid.*) The

2000 tax return was signed by the paid preparer, Lawrence Goodman, and by the Gagliardis, under penalties of perjury, on April 13, 2001. (*Ibid*.)

The Gagliardis' 2000 return reported $54,072.00 in gross receipts or sales on Schedule C (Profit or Loss From Business) for the Union City dental practice. (*Ibid*.) The Gagliardis' 2000 return reported $344,717.00 in gross receipts or sales on Schedule C for Family Dentistry of Fairlawn, LLC. (*Ibid*.) The Internal Revenue Service and the Gagliardis executed a Form 872, Consent to Extend the Time to Assess Tax, on October 14, 2003, which extended the time to assess tax for the 2000 tax year to December 31, 2004. (Def. Ex. 26.)

**2. The 2001 tax year**

On April 15, 2002, the Internal Revenue Service received from the Gagliardis a U.S. Individual Income Tax Return (Form 1040) for the calendar year 2001. (Def. Ex. 2.) The Gagliardis' income tax return for the 2001 tax year reported a tax liability of $860.00, estimated tax payments for the 2001 tax year and amounts applied from the 2000 return of $16,000.00, and a tax overpayment of $15,140.00. *(Ibid.)* The Gagliardis sought to apply the $15,140.00 claimed overpayment in tax paid for 2001 to their 2002 estimated tax. *(Ibid.)* The 2001 tax return was signed by a paid preparer, Lawrence Goodman, and by the Gagliardis, under penalties of perjury, on April 11, 2002. *(Ibid.)*

The Gagliardis' 2001 return reported $58,561.00 in gross receipts or sales on Schedule C for the Union City dental practice. (*Ibid*.) The Gagliardis' 2001 return reported $575,400.00 in gross receipts or sales on Schedule C for Family Dentistry of Fairlawn, LLC. (*Ibid*.) In addition, the Gagliardis' return for the 2001 tax year reported $183,590.00 in gross receipts or sales on Schedule C for Restorative Dentistry. (*Ibid*.)

Mr. Goodman prepared the Gagliardis' 2000 and 2001 income tax returns without the knowledge that the Gagliardis had deposited business receipts into their personal bank accounts. *(See* Def. Exs. 19, 20.) The Gagliardis concealed their practice from Mr. Goodman and their bookkeeper, Ms. Downey. Furthermore, the Gagliardis concealed from Mr. Goodman and Ms. Downey the existence of a personal checking account at Kearny Federal Savings Bank, where the Gagliardis had deposited many of the unreported business receipts. (*Ibid*.) Through these repeated acts of concealment, the Gagliardis prevented Ms. Downey from preparing books and records that accurately reflected all of the income earned by the Union City location. This forestalled Mr. Goodman from properly reporting all their business receipts on their 2000 and 2001 income tax returns. Mr. Goodman prepared the business portion of the Gagliardis' income tax returns for 2000 and 2001 by relying upon reports provided by Ms. Downey. Ultimately, $68,071.00 of the $122,143.00 earned by Dr. Gagliardi's dental practice in Union City in 2000 and $40,621.00 of the $99,182.00 earned by the same practice in 2001 were not reported on the Gagliardis' tax returns. (*See* Def. Exs. 1-2,10.)

**D. Failure to cooperate with tax authorities through concealment of income and assets during examination of tax returns**

In 2003, upon the Gagliardis' notification by the Internal Revenue Service that they would be subject to an examination, the Gagliardis appointed Mr. Goodman to represent them before the Internal Revenue Service with respect to matters pertaining to their 2000 and 2001 income tax returns. (Def. Exs. 11-12.) The Gagliardis placed no special restrictions on Mr. Goodman's

representation of them[1] and did not terminate Mr. Goodman's representation until September 2004, more than a month after the close of the examination. *(See* Def. Exs. 11-12, Plt. Ex. F.)

During the Internal Revenue Service's examination, the Gagliardis again concealed from Mr. Goodman both their practice of depositing business receipts into personal bank accounts and the existence of the personal checking account at Kearny Federal Savings Bank. In connection with the examination of the Gagliardis' 2001 income tax return, the Internal Revenue Service requested the Gagliardis to provide "bank statements for all accounts – personal and business – savings, checking, trust, investment, brokerage accounts for period covering 1/1/2001 through 12/31/2001." (*See* Def. Ex. 25.) Mr. Goodman sought the requested documents – specifying both personal and business accounts – from the Gagliardis. Still, the Gagliardis did not provide Mr. Goodman with the records relating to the account at Kearny Federal Savings Bank. Nor did the Gagliardis otherwise reveal to Mr. Goodman the existence of that personal checking account.

The Internal Revenue Service learned of the account at Kearny Federal Savings Bank from its review of materials obtained through a summons issued to another financial institution, not through any information the Gagliardis, through their representative Mr. Goodman, supplied. (Def. Ex. 17.) Upon this discovery, the Internal Revenue Service issued an Information Document Request to the Gagliardis, seeking an explanation for the account at Kearny. (*See* Plt. Ex. E.) Again, the Internal Revenue Service encountered inadequate cooperation. Mr. Goodman

---

[1] Mr. Goodman was "authorized to receive and inspect confidential tax information and to perform any and all acts that [the Gagliardis] can perform with respect to the tax matters described . . . , for example the authority to sign any agreements, consents, or other documents. The authority [did] not include the power to receive refund checks . . . , the power to substitute another representative, the authority to execute a request for a tax return, or a consent to disclose tax information . . ., or the power to sign certain returns." (*See* Def. Exs. 11-12.)

did not possess copies of the bank statements for the Kearny account and was told by the Gagliardis that they did not either. Without taxpayer cooperation, the Internal Revenue Service was left to issue a summons to Kearny Federal Savings Bank in order to obtain records which would allow for the identification of deposit and withdrawal amounts.

At the conclusion of the audit, the Internal Revenue Service determined that the Gagliardis had unreported business income in connection with the Union City dental practice for the 2000 and 2001 tax years. (Def. Ex. 10.) The underpayment of tax for 2000 is attributable to the omission of gross receipts of $68,071.00 from the Gagliardis' tax return. (Def. Exs. 10, 19.) This omission corresponds to amounts earned by the Union City dental practice that were not deposited into the business checking account associated with the Union City dental practice. Instead, during the 2000 tax year dental receipts from the Union City office totaling $68,071 were deposited into three different personal bank accounts maintained by the Gagliardis: (1) Roberto Gagliardi's personal checking account (006-912660-6) at Kearny Federal Savings Bank ($29,826.65); (2) a personal checking account (412-3035540) shared by Roberto Gagliardi and his mother at Fleet National Bank ($10,696.00); and (3) Maria Gagliardi's personal checking account (0201330164) at Fleet National Bank ($26,080.61). (Def. Exs. 19, 21, 22.) During the 2001 tax year the unreported dental income from the Union City office was deposited into one personal account maintained by the Gagliardis, the account at Kearny Federal Savings Bank.

The underpayment of tax for the 2001 tax year is attributable to the omission of gross receipts of $40,621.00 from the Gagliardis' tax return. (Def. Exs. 10, 20.) As set forth above, this omission consists primarily of amounts earned by the Union City dental practice that were not deposited into the business checking account associated with that practice but were instead

deposited into Roberto Gagliardi's personal checking account (006-912660-6) at Kearny Federal Savings Bank. (Def. Exs. 20, 21.)

The Internal Revenue Service mailed various drafts of Forms 4549, Income Tax Examination changes, on June 16, 18, and 22, 2004, with the final report mailed on July 7, 2004, to Roberto Gagliardi with a copy under separate cover to Maria Gagliardi. (Def. Exs. 10, 13-15.) The Form 4549 sets forth the examination changes determined by the Internal Revenue Service at the conclusion of the audit for the 2000 and 2001 tax years. (Def. Ex. 10.) The referenced reports were sent directly to the Gagliardis during the audit and each report set forth an increase in tax for 2000 and 2001 as well as the imposition of a civil fraud penalty for both years. (*Ibid*.)

At the close of the audit, Lawrence Goodman, as the Gagliardis' representative, executed a Form 4549, Income Tax Examination Changes, on their behalf on July 14, 2004. (Def. Ex. 10.) The Form 4549 sets forth an increase of $17,917.00 in income tax due for the 2000 tax year and an increase of $5,740.00 in income tax due for the 2001 tax year. (*Ibid*.) In addition, the Form 4549 reflects a fraud penalty pursuant to I.R.C. § 6663 in the amount of $13,437.75 for the 2000 tax year and $4,305.00 for the 2001 tax year because the underpayment of tax for both years was determined to be "due to fraud." (*Ibid*.) By agreeing to the Form 4549, the Gagliardis gave their "consent to the immediate assessment and collection of any increase in tax and penalties" shown in the report. (*Ibid*.)

On July 14, 2004, Mr. Goodman also executed a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment, on behalf of the Gagliardis. (Def. Ex. 9.) The Form 870 sets forth the audit determinations for the 2000 and 2001 tax years. (*Ibid*.) By agreeing to the Form 870, the Gagliardis consented to the "immediate assessment of any . . . increase in tax and penalties" shown on the report. (*Ibid.*)

The Gagliardis were scheduled to travel abroad on or about July 14, 2004. Prior to their departure, Mr. Goodman contacted them to discuss the final audit determinations. Based on his discussions with the Gagliardis, Mr. Goodman executed the Form 4549 and Form 870 on their behalf, closing the audit for the 2000 and 2001 tax years on an agreed basis with respect to both the income tax determinations and the civil fraud penalties imposed. (Def. Exs. 9, 10.)

**E. Implausible and inconsistent explanations**

Roberto Gagliardi has suggested, under oath, that the Gagliardis started their practice of depositing business receipts into personal accounts based in part on advice provided by Mr. Goodman. According to Roberto Gagliardi, Mr. Goodman recommended that the Gagliardis deposit business receipts into personal accounts opened in their children's names. Mr. Goodman adamantly denies that this assertion is true. At all events, there is *no* evidence to suggest that the Gagliardis deposited business income into their children's bank accounts, and there *is* evidence that the Gagliardis deposited business income into various personal bank accounts, including a personal checking account shared by Roberto Gagliardi and his mother at Fleet National Bank (Def. Exs. 17, 19.) Moreover, despite Roberto Gagliardi's allegations regarding Mr. Goodman's purported illegal income-diversion advice, the Gagliardis continued to retain Mr. Goodman's tax return preparation services and selected Mr. Goodman to represent them before the Internal Revenue Service during the examination of the years in issue.

**F. Claims for Refund**

On September 14, 2004, the Internal Revenue Service received from the Gagliardis a Form 843, Claim for Refund and Request for Abatement, seeking a refund of the fraud penalty [$13,437.75] and interest on the fraud penalty assessed for the 2000 tax year. (Def. Ex. 3.) On September 22, 2004, the Internal Revenue Service received from the Gagliardis a Form 843

seeking a refund of the fraud penalty [$4,305.00] and interest on the fraud penalty assessed for the 2001 tax year. (Def. Ex. 4.)

The Internal Revenue Service sent a second letter by certified mail on December 9, 2004, disallowing the Gagliardis' claims for refund for the 2000 and 2001 tax years. (Def. Ex. 5.) On June 1, 2005, the Internal Revenue Service sent a letter by certified mail to the Gagliardis disallowing their claim for refund for the 2000 tax year. (Def. Ex. 6.) The Gagliardis filed their complaint in the instant action on November 29, 2006. (Compl.)

## III

## DEFENDANT'S CONTENTIONS OF LAW

### A. The statutory framework

A civil fraud penalty is imposed pursuant to I.R.C. § 6663(a)[2] as follows:

> IMPOSITION OF PENALTY. – If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

---

[2] As used in this context, Congress has statutorily defined the term "underpayment" for purposes of the fraud penalty in I.R.C. § 6664(a) as follows:

> Underpayment.--For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title [*i.e.*, the Internal Revenue Code] exceeds the excess of--
>
> (1) the sum of--
>
> (A) the amount shown as the tax by the taxpayer on his return, plus
>
> (B) amounts not so shown previously assessed (or collected without assessment), over
>
> (2) the amount of rebates made.
>
> For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

The Supreme Court has explained that this type of sanction is "remedial" and "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938).

For purposes of this sanction, any part of any underpayment is established to be "due to fraud" where "clear and convincing evidence" persuades the Court that, factually, there existed "intentional wrongdoing on the part of a taxpayer motivated by a specific purpose to evade a tax known or believed to be owing." *Irolla v. United States*, 390 F.2d 951, 953 (Ct. Cl. 1968) (citations omitted). The term "fraud," in the civil penalty context, additionally can encompass "bad faith and a sinister motive." *Gillespie & Ellard v. United States*, 231 Ct. Cl. 851 (1982) (citation omitted); *see also White v. United States*, 20 F.Supp. 623, 625 (W.D. Ky. 1937) ("If there has been deliberate suppression of vital facts in the return, which is misleading, it is a fraud, and the misrepresentation will support fraud penalties if made recklessly without knowledge, or if so carelessly done as to lead a trier of facts to believe that the person on whom the duty rests to disclose has knowingly or intentionally failed to do what the law requires.").

**B. Intent Proven Through Badges of Fraud**

Though directly using the "state of the taxpayer's mind, a subjective condition," to prove fraudulent intent "often" can be "difficult," the "burden of proof on the issue of fraud" may be met "by means of circumstantial evidence." *Irolla*, 390 F.2d at 953-54 (citations omitted); *see also Richardson v. Commissioner*, 509 F.3d 736, 743 (6th Cir. 2007) ("It is the rare taxpayer who announces to the world his intent to defraud the Federal Government. In finding tax fraud, courts thus rely as they must upon circumstantial evidence, inferring the requisite intent from any conduct, the likely effect of which would be to mislead or to conceal.") (citations omitted);

*Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir. 1986) ("Because fraudulent intent is rarely established by direct evidence, this court has inferred intent from various kinds of circumstantial evidence."). Proof of tax fraud is accomplished indirectly "[w]hen all the circumstances that gave rise to the present litigation are considered" and "it appears that the existence of a fraudulent intent on the part of [the taxpayer] to evade the payment of . . . taxes during the period [at issue] has been established by clear and convincing evidence." *Irolla*, 390 F.2d at 954. "[P]ertinent factors leading to this conclusion," *id*., include the presence of common law "badges of fraud." *See Lipsitz v. Commissioner*, 220 F.2d 871, 875 (4th Cir. 1955), *cert. denied*, 350 U.S. 845 (1955) (affirming imposition of the civil penalty where "the customary badges of fraud" were present).

The judiciary often has cited various badges of fraud, which when present in particular circumstances of a case, properly would lead to a conclusion that an underpayment of tax was, in fact, due to fraud. *See, e.g., Richardson*, 509 F.3d at 743; *Bradford*, 796 F.2d at 307; *Solomon v. Commissioner*, 732 F.2d 1459, 1461 (6th Cir. 1984); *Foster v. Commissioner*, 391 F.2d 727, 733 (4th Cir. 1968). It is generally recognized that each such compilation is a "nonexclusive list," *see Meier v. Commissioner*, 91 T.C. 273, 297 (1988), and that "each case must be considered in the light of its own particular facts." *Bryan v. Commissioner*, 209 F.2d 822, 828 (5th Cir. 1954), *cert. denied*, 348 U.S. 912 (1955).

Here, the badges of fraud are manifest. The Gagliardis concealed substantial portions of their income in multiple years. The Gagliardis persistently concealed information from both their accountant and their bookkeeper. The Gagliardis concealed assets repeatedly. The Gagliardis failed to keep adequate records reflecting all their business income. The Gagliardis failed to cooperate with tax authorities. The stories offered by the Gagliardis have been implausible and

inconsistent. These badges of fraud show clearly and convincingly that the Gagliardis' underpayments now at issue were due to fraud.

**1. Concealment through understatement of income in multiple years**

"[R]epeated understatements in successive years when coupled with other circumstances showing an intent to conceal or misstate taxable income present a basis on which a [c]ourt may properly infer fraud." *Anderson v. Commissioner*, 250 F.2d 242, 250 (5th Cir. 1957), *cert. denied*, 356 U.S. 950 (1958); *see also Lollis v. Commissioner*, 595 F.2d 1189, 1191 (9th Cir. 1979) ("Consistent and substantial understatement of income is itself evidence of fraud."); *Kurnick v. Commissioner*, 232 F.2d 678, 681 (6th Cir. 1956) ("Consistent, substantial understatement of income for several years, as was true here, is highly persuasive evidence of intent to defraud the government. . . . [E]vidence of a consistent pattern of underreporting large amounts of income will support an inference of willfulness.") (citations omitted). A substantial portion of the gross receipts attributable to Dr. Gagliardi's Union City practice was not reported on the tax returns for the years at issue. A pattern of understatement of income covering a number of years is evidence that the omissions of income from the tax returns was intentional, *i.e.*, a willful attempt to evade from which fraud can be inferred. *See Holland v. United States*, 348 U.S. 121, 137 (1954).

**2. Concealment of information from accountant and bookkeeper**

"Concealment of information from an accountant is" itself "evidence of fraud." *Polidori v. Commissioner*, T.C. Memo. 1996-514 (1996); *see also United States v. Bishop*, 264 F.3d 535, 552-53 (5th Cir. 2001) (That it had been shown that the taxpayer "specifically requested that the . . . check be deposited in his personal account, knowing that such a transaction would prevent the fee from being recorded in his firm's books" and the taxpayer "then gave inaccurate and misleading information to his return preparers, telling them that there was no income other than that listed on

the firm's books" supported a *criminal* conviction for tax fraud); *Foster*, 391 F.2d at 732 ("The evidence does not disclose that [the taxpayer] ever gave [his tax advisor] information concerning all the diversions he was making to his personal use from the New York account or that [the tax advisor] made any examination of that account which would permit [the tax advisor] to prepare correct returns of his income reflecting the taxable effect of these diversions.");[3] *United States v. Madden*, 300 F.2d 757, 758 (4th Cir. 1962) ("There was evidence of a pattern of concealment of his true income from his accountants with the full knowledge that his returns prepared by them would be incorrect."); *DiLeo v. Commissioner*, 96 T.C. 858, 875 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992), *cert. denied*, 506 U.S. 868 (1992) (taxpayers "failed to inform the accountant who prepared . . . tax returns of the existence of the secret bank accounts"); *Kosinski v. Commissioner*, T.C. Memo. 2007-173 (2007) (Taxpayer's "failure to inform the accountants . . . of the existence of the cash advances . . . or that . . . taxpayer . . . deposit[ed] . . . funds in [a] personal bank account[] is indicative of fraud."). Roberto and Maria Gagliardi repeatedly concealed from their accountant, Mr. Goodman, and their bookkeeper, Carole Downey, their practice of depositing

---

[3] Noting the taxpayer's "fail[ure] . . . to point to any positive evidence that he disclosed to [his tax advisor] or the accountant all facts necessary for the filing of correct returns," the Fourth Circuit rejected the argument that the government's "burden of proof on the fraud issue" demanded that "the absence of proof of disclosure must be resolved against" the government. *Foster*, 391 F.2d at 732. The appeals court explained *(id)*:

> It seems extremely unlikely that any positive proof of a failure to disclose would be available in a situation such as this. A lack of evidence of disclosure is itself some proof of nondisclosure, and when this lack of evidence of disclosure is accompanied by circumstantial evidence tending to support a finding of nondisclosure, that finding should stand.

business receipts into personal bank accounts and the existence of the personal checking account at Kearny Federal Savings Bank.

**3. Concealment of assets**

Concealment of assets is another badge of fraud. *See Alexander Shokai, Inc. v. Commissioner*, 34 F.3d 1480, 1487 (9th Cir. 1994), *cert. denied*, 514 U.S. 1062 (1995) (taxpayer "failed to inform [his wife], [his tax preparer], and [his] staff of the existence of the . . . payments and the . . . account"); *Ruark v. Commissioner*, 449 F.2d 311, 313 (9th Cir. 1971) ("[T]he concealment of the ownership of property . . . is indicative of a willful intent to evade taxes."); *see also Spies v. United States*, 317 U.S. 492, 499 (1943) (listing "[b]y way of illustration, and not by way of limitation . . . concealment of assets" among conduct from which felonious "affirmative willful attempt [to defeat or evade tax] may be inferred"). The Gagliardis repeatedly concealed the existence of their secret checking account at Kearny Federal Savings Bank from their accountant and their bookkeeper. [4]

**4. Inadequate records**

Similarly, "[i]nadequate or non-existent records are also a badge of fraud." *Lollis*, 595 F.2d at 1192; *McGraw v. Commissioner*, 384 F.3d 965, 971 (8th Cir. 2004) (listing "inadequate records" among the conduct that "can establish fraud"); *Baumgardner v. Commissioner*, 251 F.2d 311, 314 (9th Cir. 1957) ("Failure to make or keep records usual in business transactions is one of the badges of fraud in tax cases."); *Koscove v. Commissioner*, 225 F.2d 85, 87 (10th Cir. 1955) ("In determining whether income tax returns were fraudulently filed, . . . failure to keep proper books and records" is among "proper factors to consider in determining the question of fraud.");

[4] The Kearny Federal Savings Bank account is different from the other personal accounts into which the Gagliardis' deposited dental income in that its existence was concealed. Neither the Gagliardis' accountant nor their bookkeeper was aware of the Kearny bank account.

*DiLeo*, 96 T.C. at 890 (Taxpayers "did not maintain any books or records reflecting transactions made with respect to the secret bank accounts."). The Gagliardis failed to produce adequate records reflecting all the business income of Roberto Gagliardi's Union City dental practice because they failed to advise their bookkeeper and their accountant that they were depositing dental income into their personal accounts.

**5. Failure to cooperate with tax authorities**

Another badge of fraud is the failure to cooperate with tax authorities. *See Irolla*, 390 F.2d at 954-55 ("[A]gents asked [the taxpayer] whether he had any stocks or bonds and he replied he had none" despite having received dividends and interest from stocks and bonds and having made multiple sales of securities.); *see also Ruark*, 449 F.2d at 313 ("Taxpayer made numerous misstatements during the course of the tax audit for the years in question – she denied the existence of savings accounts."); *Powell v. Granquist*, 252 F.2d 56, 61 (9th Cir. 1958) ("Complete cooperation between petitioners and respondent's agents was never had.").

The obligation to cooperate with tax authorities during an examination falls upon the taxpayer. A taxpayer may discharge this obligation personally or through a representative. Thus, "[w]hen a taxpayer executes a valid Form 2848 [Power of Attorney and Declaration of Representative], he is normally bound by the acts performed by his agent pursuant to the power of attorney." *Lavine v. Commissioner*, T.C. Memo. 1995-270 (1995). When neither the taxpayer nor a representative is cooperative, fraud on the part of the taxpayer is suggested. *See Meredith v. Commissioner*, T.C. Memo. 1985-170 (1985) ("[N]either petitioner nor his attorney cooperated with [Internal Revenue Service] agents during their investigation, failing to produce requested records.").

Because the law of agency controls, a taxpayer, "as principal, may be bound by the acts of [a representative] as to [the Internal Revenue Service]" – even when the representative's acts do not entirely accord with the interests of the principal – if the Internal Revenue Service "had no reason to know of [the representative's] improper conduct" against his principal. *Willoughby v. Commissioner*, T.C. Memo. 1994-398 (1994).[5] "[D]isloyalty d[oes] not affect [the Internal Revenue Service's] right to rely on [a representative's] apparent authority." *Id.* Therefore, "uncooperative conduct through [one's] agent . . . support[s] the position that [a taxpayer] did not cooperate with the Internal Revenue Service." *In re Peterson*, 317 B.R. 556, 565 (Bank. N.D. Ga. 2004).[6]

---

[5] The Gagliardis suggest Mr. Goodman's representation of them was tainted by the divergence of his and their interests because Mr. Goodman would have the incentive to hide any errors he may have made in the preparation of the Gagliardis' tax returns. This potential conflict is present any time a return preparer is designated by a taxpayer to provide representation during the examination of a return the preparer prepared. Taxpayers who intentionally select the same person for tax return preparation and audit representation have decided to bear this risk. The Internal Revenue Service must be able to rely on a taxpayer's designation of a representative without second guessing.

[6] *In re Peterson*, 317 B.R. at 565, the bankruptcy court explained:

> The Plaintiff's execution of a valid Form 2848 providing Fritton with a power of attorney as his representative bound the Plaintiff to any uncooperative conduct by Fritton as if it were his own. Since the Plaintiff has produced no evidence that the Form 2848 was revoked or no longer in effect when Fritton acted on his behalf, he is bound by Fritton's uncooperative conduct.

The bankruptcy court made the referenced observation in the course of determining whether Section 523(a)(1)(C) of the Bankruptcy Code, codified in the U.S. Code at Title 11, barred the discharge of certain tax obligations. *Id.* at 561. "To establish this exception, the [government] must prove a statutory civil fraud violation under [then-]I.R.C. § 6653(b)," now codified at I.R.C. § 6663(a). *See McKay v. United States*, 957 F.2d 689, 691 (9th Cir. 1992).

Wholly apart from imputing an agent's conduct to his principal, *see Long Island Savings Bank v. United States*, 503 F.3d 1234, 1246-50 (Fed. Cir. 2007), the law has long recognized that "[t]he agent may be supposed to have been made the innocent instrument of fraud." *Lessee of Swayze v. Burke*, 37 U.S. 11, 25 (1838). "Making false and misleading representations to [one's] accountants for purposes of misleading the Internal Revenue Service in connection with an Internal Revenue Service audit" is but one way to "obstruct[] efforts by the Internal Revenue Service." *United States v. Anderson*, 384 F.Supp.2d 32 (D.D.C. 2005) (discussing a criminal indictment). *See Gillespie & Ellard*, 231 Ct. Cl. 851 (1982) ("[T]he evidence shows that Mr. Ellard intentionally prepared (either personally or through a bookkeeper acting under his instructions) false invoices.").

The Internal Revenue Service received inadequate cooperation during its examination of the Gagliardis' returns. The Internal Revenue Service was not told of the existence of the secret checking account at Kearny when it asked for personal and business accounts. The Internal Revenue Service was not provided records pertaining to activity in the Kearny account. The Gagliardis chose not to equip their representative with the information necessary to provide the Internal Revenue Service complete responses. Accordingly, only through independent investigation did the Internal Revenue Service discover the secret account at Kearny. To identify deposit and withdrawal amounts for that account, the Internal Revenue Service had to resort to issuing a summons to Kearny Federal Savings Bank.

**6. Implausible or inconsistent explanations of behavior**

Implausible or inconsistent explanations of behavior serve as yet another badge of fraud. *Richardson*, 509 F.3d at 743-745; *see also McGraw*, 384 F.3d at 971 (Along with other badges, "unsatisfactory explanations for such underreporting . . . can establish fraud."); *Koscove*, 225 F.2d

at 87 ("[T]he giving of evasive answers [is a] . . . proper factor to consider in determining the question of fraud."); *Chevron U.S.A., Inc. v. Lutz*, 271 F.Supp.2d, 1204 (N.D. Cal. 2003). "[C]ontradictions and inconsistences attributable to [the taxpayer] since his tax returns came under investigation . . . . [are] entitled to considerable weight as supporting the inference of wrongful intent in the absence of satisfactory explanation of or excuse for them." *Armstrong v. United States*, 354 F.2d 274, 286 (Ct. Cl. 1965).

The stories the Gagliardis have offered are inconsistent and implausible. The Gagliardis allege Mr. Goodman sought to "cover up" his own negligence by agreeing to a fraud penalty, but why would Mr. Goodman risk his professional reputation in this manner? The Gagliardis know what information they provided Mr. Goodman and what they hid from him. The Gagliardis claim to be "victims of their accountant's dishonest behavior," but how would their victimization have benefitted Mr. Goodman? The Gagliardis complain of suspect advice from Mr. Goodman, yet they continued to retain his services. The Gagliardis have denied keeping books and records, have claimed to have given "access to all our books and records" to Mr. Goodman, and have identified Mr. Goodman as the one who "prepared the books and records." Dr. Gagliardi has both claimed to have explained to Mr. Goodman that business receipts were being deposited into business and personal accounts and denied having talked with Mr. Goodman about the issue of capturing all income. The Gagliardis' shifting stories are irreconcilable.

In sum, the presence of multiple badges of fraud establish, by clear and convincing evidence, that Roberto and Maria Gagliardi systematically failed to report a substantial portion of their gross receipts on their federal income tax returns for each of the years in issue and that these understatements were due to fraud. *Cf. DiLeo*, 96 T.C. at 875; *see also Niedringhaus v. Commissioner*, 99 T.C. 202, 215 (1992) ("Although none of petitioner's 'additional actions,'

individually would suffice to carry respondent's burden of clearly and convincingly proving fraud, taken together they present additional support for respondent's determination."); *Miller v. Commissioner*, 94 T.C. 316, 333 (1990) ("Although no single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud.").

### C. Burden Shifts to Taxpayer

Once "any portion of an underpayment" is established to be "attributable to fraud," Congress mandates that "the entire underpayment shall be treated as attributable to fraud." I.R.C. § 6663(b). A "portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud" is excepted from this taint. *See* § 6663(b). Similarly, the Internal Revenue Code offers a "reasonable cause exception" limited to "any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." *See* § 6664(c)(1). Accordingly, "[g]ood faith reliance on expert advice of a tax preparer . . . may be a defense." *McGraw*, 384 F.3d at 973.

"To establish this defense, . . . the *taxpayer[s]* must demonstrate that [they] provided the tax preparer with a complete disclosure of all the relevant facts." *Ibid*. (citation omitted) (emphasis added). "Reliance on a bookkeeper or accountant is no defense to fraud if the taxpayer failed to provide the accountant with all the data necessary for maintaining complete and accurate records." *Korecky v. Commissioner*, 781 F.2d 1566, 1569 (11th Cir. 1986) (citation omitted); *see also Polidari*, T.C. Memo. 1996-514 ("Reliance upon an accountant to prepare accurate returns may negate fraudulent intent if the accountant has been supplied with all the information necessary to prepare the returns."). Taxpayers "cannot blame their return preparer[] for the substantial errors in reporting their tax liability . . . when [the taxpayers], who alone possessed the information that

would have indicated potential discrepancies between [the taxpayers'] actual tax liabilities and the amounts reported on their returns, provided the accountants with misleading information and documentation." *Kosinski*, T.C. Memo. 2007-173 (2007) .

Furthermore, this defense is only available to taxpayers who have acted reasonably. Courts have "reject[ed] the . . . suggestion that blind reliance on an accountant[] . . . is sufficient per se to avoid fraud." *Estate of Trompeter v. Commissioner*, 279 F.3d 767, 774 (9th Cir. 2002). In *Allen v. Commissioner*, 128 T.C. 37, 41 (2007) (citations omitted), the Tax Court stated that:

> Taxpayers are charged with the knowledge, awareness, and responsibility for their tax returns. The taxpayer, not the preparer, has the ultimate responsibility to file his or her return and pay the tax due. This duty cannot generally be avoided by relying on an agent. We do not find it unduly burdensome for taxpayers to review their returns for items that are obviously false or incorrect. It is every taxpayer's obligation. Petitioner cannot hide behind an agent's fraudulent preparation of his returns.

A "good-faith misunderstanding of the tax laws could negate fraud" because fraud does not extend to "innocent mistakes caused by the complexity of the Internal Revenue Code." *Niedringhaus*, 99 T.C. 202, 217-18 (1992). Nonetheless, "it does not take a rocket scientist to realize that when [a taxpayer] diverted . . . gross receipts and deposited them into his personal bank accounts, and did not inform the accountant[], then the diverted amount would escape taxation." *Grant v. Commissioner*, T.C. Memo. 1994-161 (1994).

In this action, the Gagliardis are sophisticated, well-educated taxpayers. Maria Gagliardi has a degree in business, worked for several years at a bank and helped her husband with the bookkeeping for the Union City dental office, the office which the Internal Revenue Service determined had unreported income in both 2000 and 2001. Although the Gagliardis are well versed in business matters, they did not provide their tax preparer, Mr. Goodman, or their

bookkeeper, Carole Downey, all the information needed to accurately report all their income on their tax returns for the 2000 and 2001 tax years. Therefore, the Gagliardis cannot avoid the civil fraud penalty [which they agreed to on audit] by attempting to assert "good faith" reliance on advice from their tax preparer as a defense.

**CONCLUSION**

The underpayments of tax for 2000 and 2001 are due to fraud and the civil fraud penalty of § 6663 is applicable to both years. The Gagliardis complaint should be dismissed with prejudice and costs awarded to defendant.

Respectfully submitted,

s/Jennifer Dover Spriggs

JENNIFER DOVER SPRIGGS
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0840

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer
RICHARD H. BOWLES
Trial Attorney

s/G. Robson Stewart
Of Counsel

February 12, 2008